553 A.2d 436

Margaret **ADELSTEIN**, Appellant,

v.

Sheldon **ADELSTEIN**, Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 9, 1988.

Filed Jan. 26, 1989.

William R. Lee, Scranton, for appellant.

David P. Posatko, Public Defender, Tunkhannock, for appellee.

Before WIEAND, McEWEN and MELINSON, JJ.

WIEAND, Judge:

The trial court, acting upon recommendations made by a master, entered a decree of equitable distribution which (1)

awarded alimony to the wife at the rate of fifty ($50) dollars per week for one year; (2) directed each party to pay his or her own counsel fees and expenses; (3) directed that the proceeds derived from the sale of the marital home be divided equally; and (4) awarded wife a one-half (½) interest in a single share of stock owned by husband and representing a one one-hundredths interest in a closely held business corporation. The wife appealed. In every respect, she contends, the awards made to her were inadequate. We find merit in the last of her contentions; and, therefore, we reverse and remand for further consideration.

Margaret and Sheldon Adelstein were married on April 25, 1964. Following marriage, Margaret discontinued her employment and for the next eighteen years became a homemaker and mother.[1] Sheldon was one of two shareholders in NEPP Wire Products, Inc., a closely held corporation engaged in the business of manufacturing lamp shades and lamp components. The parties separated in 1982, and a divorce action followed. Prior to the hearing before a master, most items of personal property had been distributed by and between the parties. The master, after taking testimony, made additional recommendations which the court, despite exceptions by both spouses, incorporated into a final decree.

The trial court's order regarding alimony must be evaluated against an abuse of discretion standard. *Mazzei v. Mazzei*, 331 Pa.Super. 432, 437, 480 A.2d 1111, 1113 (1984). "[I]f a party receiving alimony is able to provide for [her] reasonable needs through employment, the court is to fashion an alimony order to be in effect only until such employment has been obtained or the party has developed an appropriate employable skill." *Id.*, 331 Pa.Superior Ct. at 443, 480 A.2d at 1116, quoting *Geyer v. Geyer*, 310 Pa.Super. 456, 464, 456 A.2d 1025, 1029 (1983). Here, the husband-appellee has supported the wife-appellant during

1. Two children were born of the marriage. At the time of the trial court's decision, they were 21 and 19 years old. Their support is not in issue.

the pendency of the divorce proceedings, and the trial court found that wife-appellant, in an additional year, should be able to become self-supporting. The record discloses no impediment, whether physical, mental, or educational, that would prevent appellant from supporting herself. Under these circumstances, there is no basis in this case for finding an abuse of the trial court's discretion in the fixing of alimony.

In determining the propriety of an award of counsel fees, we also utilize an abuse of discretion standard of review. *Miller v. Miller,* 352 Pa.Super. 432, 443, 508 A.2d 550, 556 (1986); *Pangallo v. Pangallo,* 329 Pa.Super. 25, 31, 477 A.2d 885, 888 (1984); *Prozzoly v. Prozzoly,* 327 Pa.Super. 326, 331, 475 A.2d 820, 823 (1984); *Ruth v. Ruth,* 316 Pa.Super. 282, 285, 462 A.2d 1351, 1352–1353 (1983). However, counsel fees are not awarded to either spouse automatically. *Diamond v. Diamond,* [360 Pa. Super. 101, 116, 519 A.2d 1012, 1019 (1987)]. "Actual need must be shown in order to justify an award." *Dech v. Dech,* 342 Pa.Super. 17, 23, 492 A.2d 41, 44 (1985), citing *Hoover v. Hoover,* 288 Pa.Super. 159, 161–162, 431 A.2d 337, 338 (1981). Counsel fees are appropriate when necessary to put the parties "on a par" in defending their rights or in allowing a dependent spouse to maintain or defend an action for divorce. See: *Miller v. Miller, supra* 352 Pa.Super. at 442, 508 A.2d at 556; *Dech v. Dech, supra; Young v. Young,* 274 Pa.Super. 298, 302, 418 A.2d 415, 417 (1980).

*Johnson v. Johnson,* 365 Pa.Super. 409, 415, 529 A.2d 1123, 1126 (1987). In the instant case, the court determined that the distribution of property was sufficient to require both spouses to pay their own legal fees. A spouse's separate estate is a legitimate consideration in the trial court's determination of a request for counsel fees. *Fitzpatrick v. Fitzpatrick,* 377 Pa.Super. 268, 271, 547 A.2d 362, 369 (1988). We find no abuse of discretion in the trial court's determination that each party had sufficient assets to pay his or her own counsel fees.

■ The marital home was sold during the divorce proceedings for thirty-five thousand ($35,000) dollars. The trial court distributed these proceeds equally between the parties. Although we find no abuse of discretion in the court's equal division of the proceeds, we observe that some revision may be necessary in order to correct the error made by the court in distributing husband-appellee's interest in NEPP Wire Products, Inc., a closely held business corporation.

NEPP Wire Products, Inc. was organized in 1979 by the husband-appellee and Gene DeMuro. Its initial capitalization was forty thousand ($40,000) dollars. Of this amount, husband-appellee contributed twelve thousand five hundred ($12,500) dollars, ten thousand of which had been borrowed from DeMuro. The balance of the initial capital was contributed by DeMuro. Although one hundred (100) shares of stock had been authorized, only two shares were issued. One share was issued to DeMuro, and one share was issued to the husband-appellee. This was intended to vest an equal interest in the corporate owners. The remaining ninety-eight (98) shares were held as treasury stock.

■ The existence and nature of marital property are determined as of the date of separation. Divorce Code of April 2, 1980, P.L. 63, No. 26, § 401(e)(4), 23 P.S. § 401(e)(4). When Margaret and Sheldon Adelstein separated in 1982, Sheldon owned a one-half interest in NEPP Wire Products, Inc. This one-half interest was marital property.[2]

In 1983, while the divorce action was pending, the ninety-eight shares of treasury stock were issued to DeMuro. There was no additional consideration paid for these shares of stock. The issuance of the stock, according to the testimony, was intended to compensate DeMuro for his greater capital contribution and also to repay the initial loan of ten thousand ($10,000) dollars which he had made to the husband-appellee. The later issue of treasury stock without new consideration did not change the interest which the

**2.** On that date, of course, Sheldon Adelstein was also indebted to DeMuro in the amount of ten thousand ($10,000) dollars.

husband-appellee owned at the time of separation and which was subject to distribution in the divorce proceedings. That interest could not be diluted by the issuance of treasury stock to DeMuro without consideration. When the court held that only husband-appellee's one-one hundredth ($\frac{1}{100}$) interest constituted marital property, therefore, it erred.

The attempt by the shareholders inter se to rearrange their respective interests in the corporation did not alter Adelstein's obligation to account in the divorce action for his interest in the corporation on the date when he and his wife separated.[3] On that date, only two shares of stock were outstanding, and the husband owned one of them. If the corporation had been liquidated on the date of separation, its assets would have been distributed equally between its authorized stockholders. 18 C.J.S. *Corporations* § 212. See also: *Commonwealth v. Ajax Metal Co.*, 29 Dauph. 4, 8 Pa.D. & C. 30 (1925). Although 98 shares were then in the corporate treasury, these shares had no liquidating value and could not have participated in the distribution; they would not have been a factor in distributing the corporate assets. Henn, *The Law of Corporations* (2d edition) at 291. See also, Note, *The Legal Status of Treasury Shares*, 85 U.Pa.L.Rev. 622, 626 (1937). Where, as here, two shareholders owned one share each, the value of each share was equivalent to one-half of the corporate assets available for liquidation purposes. In a division of marital assets, the non-shareholder spouse is entitled to participate in that which the shareholder spouse would have realized if his or her interest in the corporation had been liquidated. Fletcher, *Cyclopedia of Corporations*, Stock & Stockholders, § 5102, at 116. Therefore, when appellant and appellee separated, the interest in the business to be distributed as marital property was a one-half ($\frac{1}{2}$) interest therein.

3. It is obvious that appellee-husband considered himself more than a one percent owner of the corporation, for the "consideration" for the transfer of the remaining shares of stock from the corporation's treasury was, in part, appellee's personal debt of $10,000 to DeMuro. Appellee was, in fact, using corporate assets, i.e., treasury stock, to satisfy a personal debt.

■ The Supreme Court of Pennsylvania has held that marital property is to be evaluated at the date of distribution. *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988). In the instant case, however, the corporation has appreciated in value since the separation and now has a value in excess of seven hundred thousand ($700,000) dollars. This has been accomplished in large measure because of the post-separation efforts of husband and his co-owner of the business. To these post-separation efforts, the wife-appellant has made no contribution. This, too, may be considered by the trial court in ordering distribution of marital assets equitably between husband and wife. Husband, who has already paid a part of his work product to the wife-appellant as support, should not be deprived totally of the fruits of his labor.

Reversed and remanded for further consideration in accordance with the foregoing opinion. Jurisdiction is not retained.